# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JAQUELINE DURDEN, | ) | CASE NO. 1: 12 CV 734 |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| OHIO BELL TELEPHONE | ) | |
| COMPANY, *et al.*, | ) | <u>Memorandum of Opinion and Order</u> |
| | ) | |
| **Defendants.** | ) | |

In this removed action, plaintiff alleges claims under the Family Medical Leave Act,

29 U.S.C. §2615(a) (FMLA), a claim for a "hostile work environment," and state law claims

for illegal discrimination and violation of public policy against "AT&T," Dierdre Thomas,

and Kim Miceli.  Ohio Bell Telephone Company (Ohio Bell) has answered the complaint,

asserting that AT&T was improperly named as a defendant.[1]  Pending before the Court is

Defendants' Motion for Summary Judgment (Doc. 12).  For the reasons stated below,

defendants' motion is granted.

---

[1]

Plaintiff does not appear to dispute that Ohio Bell is appropriately substituted as the
defendant.

1

**Facts**

The following facts are supported by the record.  Plaintiff, Jacqueline Durden, worked as customer service representative (CSR) in Ohio Bell's Cleveland Consumer Call Center (CCC) from July 9, 2001 until September 23, 2011, when she was terminated from her employment for fraudulently using benefits under the FMLA.  During her employment, plaintiff was a member of the Communications Workers of America union, and the terms and conditions of her employment were governed by a collective bargaining agreement between the union and Ohio Bell.  As a CSR, plaintiff worked in a call center with approximately 200 employees, handling incoming calls from residential customers regarding service, orders, and billing issues.

CSRs work on sales teams that each report to a Sales Coach Manager.  Before she was terminated, plaintiff reported to Sales Coach Dierdre Thomas.  The CCC also has an Attendance Manager who is responsible for tracking CSRs' attendance and ensuring that CSRs adhere to Ohio Bell's attendance policy.  During the period of time pertinent in this case, Kimberly Miceli was the CCC's Attendance Manager.

CCC has and enforces an attendance policy under which CSRs are expected to work their scheduled shifts unless they are excused for certain enumerated reasons.  When a CSR calls off work, the absence is either excused ("non-chargeable") or unexcused ("chargeable").  Employees are allowed a certain number of chargeable absences before they are subject to progressive discipline for unsatisfactory attendance.  Ohio Bell provides CSRs various forms of excused absence, including vacation and absences covered by FMLA.  Time off for an employee's own illness, including up to the 12 weeks of leave provided by the FMLA, is paid

time off under the CBA or under Ohio Bell's short-term disability policy (if an absence exceeds seven consecutive days).

Requests for FMLA leave are processed by AT&T's FMLA Operations Department located in San Antonio, Texas.  If a CSR has a medical condition that qualifies for intermittent FLMA leave, she can submit a medical certification from her health care provider to cover prospective absences, verifying the employee's medical condition and the anticipated frequency and duration that the employee might be incapacitated by the condition.  If the CSR is too incapacitated to work on a given day because of that condition, she can call CCC and speak with Miceli or one of her assistants (known as Technical Associates or TAs) to report that she is taking FMLA leave.  Provided the employee is otherwise eligible for FMLA leave, the request for intermittent FMLA coverage is approved if the FMLA Operations Department has a valid medical certification on file covering the absence and the absence does not exceed the frequency and duration set forth in the certification.

During her employment with Ohio Bell, plaintiff took intermittent FMLA leave and had a certification from her doctor certifying that she might be out sick from work for migraine headaches two to three days per month.  When a migraine headache occurs, plaintiff must lay down or sit in a dark quiet room and wait for the headache to pass.

On the morning of July 14, 2011, before her shift was scheduled to begin, plaintiff called CCC's attendance line and requested to take a vacation day.  When plaintiff was told there were no vacation days available, plaintiff stated that she would take an FMLA day instead.  The company subsequently informed plaintiff that because she had had more FMLA absences than were specified in her certification on file, the company needed a certification

3

from her health care provider certifying that she was too incapacitated to work on the days she was absent if she wanted to claim those days as covered under the FMLA.  Plaintiff subsequently submitted a medical certification from her doctor dated July 26, 2011, retroactively certifying that plaintiff was seen on July 26, 2011 and that she was too incapacitated to work due to migraine headaches on July 14, 2011 and on June 20, June 25, June 29, June 30, July 1, and July 12, 2011.  (Def. Ex. 9.)

On August 1, 2011, AT&T's FMLA Operations Department approved plaintiff's request for FMLA leave for her July 14, 2011 absence.  Plaintiff's other requested absences were also approved.

Plaintiff, however, obtained a marriage license in the afternoon of July 14, 2011, and was married later than evening.  Plaintiff had asked another Ohio Bell employee, who was a Baptist pastor, several months prior to July 14, 2011, to officiate at her wedding on that date. In addition, although plaintiff was not originally scheduled to work on July 13, 2011, the day before her scheduled wedding, plaintiff opted to work that day for overtime compensation.

On August 3, 2011, plaintiff submitted a copy of her marriage license to Ohio Bell for the purpose of having the company change its records to reflect her new married name.  The TA to whom plaintiff submitted her license turned it over to Miceli, who noticed that the date on the license – July 14 – was the same day that plaintiff had recently been approved for FMLA leave.  Miceli suspected that plaintiff fraudulently requested and received FMLA coverage for her July 14, 2011 absence which, if true, constituted a violation of the company's Code of Business Conduct (Code of Business Conduct of "COBC"), which requires Ohio Bell employees to act honestly and with integrity including with respect to their

4

use of company benefits.  Miceli submitted a Request for Investigation (RFI) to the company's Human Resources Department, reporting that plaintiff appeared to have misrepresented her need to take a day off of work on July 14th for an FMLA-qualifying condition.  The Human Resources Department forwarded the RFI to Mary Glass, a manager in the company's FMLA Operations Department, who asked the company's Asset Protection Department (AP) to investigate.  Plaintiff's Sales Coach, Dierdre Thomas, was notified of the investigation.

AP Investigator Ron Williams investigated the situation and forwarded a copy of his written report to CCC management, including to Freeze McCarter, the Center's Sales Manager, and the Labor Relations Manager, Rick Plant.  Mr. Williams confirmed in his investigation that plaintiff and her fiancé had applied for a marriage license at the Cuyahoga County Probate Court during the court's business hours of 8:30 am - 4:30 pm on July 14, 2011.  Williams also interviewed plaintiff, who confirmed that she obtained a license and was married that day, although plaintiff stated to Williams that she did not believe she did anything wrong.  She stated that she had "walked in places" before when she was sick and that she "tried to get a vacation day before [she] called off, [but] you have to kiss ass to get off."

CCC management decided to suspend plaintiff pending termination for violating the COBC by misusing company-paid time off and was dishonest in her representation that she was too incapacitated to work on July 14, 2011.

On September 21, 2011, in accordance with the CBA, Ohio Bell conducted a Review Board Hearing attended by CCC management and union representatives.  Before the hearing,

the union representatives were provided with the AP report regarding Williams's investigation as well as the determination of Ohio Bell's management that plaintiff's activities on July 14, 2011 were inconsistent with her representation that she suffered from an incapacitating migraine headache on that day. At the hearing, plaintiff again confirmed that she obtained her marriage license on July 14, that she had pre-planned to get a license on that day, and that she did not think there was anything dishonest about reporting to the company that she was too incapacitated to work. Based on plaintiff's statements at the hearing, and that plaintiff had first asked for a vacation day before reporting that she was too ill to work and had had opted to work on July 13 for overtime compensation even though she had not originally been scheduled to work that day, Ohio Bell concluded that plaintiff's request for FMLA and paid sick time on July 14, 2011 was dishonest and an abuse of company benefits. Ohio Bell concluded that plaintiff's absence on July 14 was pre-planned and that she was actually not too incapacitated to do her job that day.

Plaintiff was dismissed for violating the COBC, effective September 23, 2011. Plaintiff filed this lawsuit on March 27, 2012 alleging four claims: discrimination on the basis of her race ("Afro Latin American") and religion (Muslim) under Ohio Rev. Code §4112.99 (First Cause of Action); a cause of action under the FMLA, alleging that plaintiff did not abuse her rights under the FMLA because she suffers from migraine headaches which constitute a serious health condition within the meaning of the FMLA (Second Cause of Action); a claim for a "hostile work environment," alleging that plaintiff was subjected to "religious and FMLA discriminatory conduct that was unwelcome and unreasonably interfered with Plaintiff's work performance and created an intimidating, offensive, religious

6

divided hostile work environment" (Third Cause of Action); and a common law claim for wrongful discharge in violation of Ohio public policy (Fourth Cause of Action).

### Standard of Review

Federal Rule of Civil Procedure 56 governing summary judgment provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion."  This can be done by citation to "materials in the record," including depositions, documents, affidavits, stipulations, and electronically stored information.  Fed. R. Civ. P. 56(c)(1)(A).  Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "The 'mere possibility' of a factual dispute is not enough."  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1986).  In order to defeat a motion for summary judgment, the non-moving party must present probative evidence that supports its position.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  In determining a motion for summary judgment, the non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.  *Id.* at

7

255.

**Discussion**

*Plaintiff's Employment Discrimination Claims*

As defendants point out, plaintiff testified in her deposition she did not believe she was terminated by defendants on the basis of her race or on the basis that she used FMLA leave.  Rather, when plaintiff was asked in her deposition about the basis for her discrimination claims, plaintiff testified that she believed she was harassed, and subjected to discipline and terminated for using  FMLA leave, because of her religion and conversion to Islam.  She testified that she believed she was discriminated against on the basis of her religion because she had never been disciplined for using FMLA prior to the time she began "studying Islam," even though she had "taken FMLA leave . . . many, many, many times" before.  (Pltf. Dep. at 186-87.)  She contends that once she began studying and converting to the religion of Islam, she suffered harassment at work by co-workers and was disciplined for abusing FMLA leave.

Defendants contend they are entitled to summary judgment on all of the discrimination claims plaintiff purports to assert (whether under federal or state law or based on plaintiff's race, religion, or FMLA use).  They assert that even if plaintiff had not  "abandoned" claims of race and FMLA discrimination by virtue of the testimony in her deposition (describing only discrimination on the basis of her religion as being the basis for her claims), plaintiff is still unable to make out a viable *prima facie* discrimination claim on any basis.  Defendants contend plaintiff cannot establish a *prima facie* case because there is no evidence that plaintiff was treated less favorably than any other similarly situated CSR outside of plaintiff's

8

"protected class(es)." They assert: "There is not a shred of evidence that any other CSR who misused . . . FMLA leave or paid sick time for a reason other than a qualifying condition maintained their employment with Ohio Bell." (Def. mem. at 14.) Further, defendants contend plaintiff cannot make out a *prima facie* case of religious discrimination – the only basis plaintiff testified to in her deposition –  for the additional reason that there are no facts or evidence indicating that the decision-makers in the adverse decisions against her had any knowledge of her religious beliefs.

Defendants further argue that even assuming plaintiff could satisfy her *prima facie* burden in connection with a discrimination claim, plaintiff cannot show that Ohio Bell's legitimate, nondiscriminatory reason for terminating her employment is a pretext. Rather, defendants contend the evidence shows that Ohio Bell genuinely believed and concluded after an investigation that plaintiff fraudulently used FMLA leave on July 14, 2011, a day plaintiff had pre-planned to obtain a marriage license and get married, and they assert that "[plaintiff] has no evidence calling into question the honesty of Ohio Bell's articulated reason for her termination– that she requested and received FMLA leave and paid sick time for a reason other than a qualifying health condition." (Def. Mem. at 15.)

Plaintiff does not clearly explain the nature of or legal basis for her discrimination claims in her opposition brief. She broadly asserts in her brief that the "[f]acts and inferences here strongly suggest religious, retaliatory, age and racially motivated dismissal of an employee." (Pltf. Opp. at 5.) But the only "evidence" plaintiff points to demonstrate a *prima case* of discrimination in her opposition brief is her own affidavit attached to her brief in which she asserts that "there has [sic] been several people that are not Muslims and that are

white [who] have been suspended for FMLA and never fired."  In her affidavit, plaintiff

asserts:

> The names and identity of these white employees is (1) James Bloch who was
> caught running errands shopping with his wife at the mall and was never let
> go.  I heard this because it was all over the center; he made jokes and bragged
> about it all of the time.  Other white co-workers who were found to be in
> violation of FMLA policy but never fired were (2) Nicole Miller, (3) Kathryn
> Lovejoy, and (4) Maureen Kolar, these are my white and non-Muslim
> coworkers that were suspended for FMLA, but never fired.

(Pltf. Opp. at 6.)

The Court agrees with defendants that plaintiff has failed to meet her burden on

summary judgment of demonstrating a *prima facie* case of discrimination on any basis.  Ohio

courts apply federal case law interpreting Title VII of the federal Civil Rights Act of 1964 to

analyze employment discrimination claims brought under the Ohio Civil Rights Act, Ohio

Rev. Code §4112.01 *et seq. Birch v. Cuyahoga County Probate Court*, 173 Ohio App.3d 696,

704 (Ohio App. 2007).  Under the analysis applicable to both federal and state law

discrimination claims, a plaintiff alleging employment discrimination bears the burden of

demonstrating a *prima facie* case.  To establish a *prima facie* case through circumstantial

evidence, a plaintiff must show that: (1) she is a member of a protected class; (2) she was

qualified for the position in question; (3) she suffered an adverse employment action; and (4)

she was treated less favorably than a similarly situated individual outside of her protected

class.  *Id.*  In order to show the fourth element of a *prima facie* case, that she was treated less

favorably than a similarly situated individual outside of her protected class, the plaintiff must

show that "all of the relevant aspects of her employment situation were nearly identical" to

the situation of a comparable employee.  *Quinn-Hunt v. Bennett Enterprises, Inc.*, 211 Fed.

10

Appx. 452, 457 (6th Cir. 2006). This generally requires the plaintiff to show that she and a comparable employee (who was treated more favorably than she was): (1) shared the same supervisor; (2) were subject to the same standards; and (3) engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Barry v. Noble Metal Processing, Inc.*, 276 Fed. Appx. 477, 480-81 (6th Cir. 2008).

Plaintiff's affidavit is insufficient in this regard. Plaintiff simply states in her affidavit that other white, non-Muslim employees were suspended but not terminated by Ohio Bell like she was even though these other employees were "found to be in violation of FMLA policy." But plaintiff produces no evidence outside of her own conclusory assertions to demonstrate that the employees she names were, in fact, found to be in violation of FMLA policy by Ohio Bell. Further, she does not state that she has personal knowledge of such facts. Plaintiff's statement in her affidavit that "she heard" about James Bloch's situation because it was "all over the center" constitutes inadmissible hearsay. *See, e.g, Quinn-Hunt v. Bennett Enterprises, Inc.*, 211 Fed. Appx. at 458 (plaintiff's statement that a hotel guest told her that another employee stole money and was suspended for three days constituted inadmissible hearsay and could not be used to assist plaintiff in establishing a *prima facie* case of discrimination on summary judgment).

Further, plaintiff produces no evidence showing that the circumstances of these other employees – even assuming the employees were found to have violated the company's FMLA policy and were suspended – were similar to plaintiff's situation in degree or seriousness, or that Ohio Bell investigated the circumstances of these other employees (as it did in plaintiff's

11

case) and concluded after an investigation that these employees actually engaged in FMLA abuse.

In sum, the Court agrees with defendants that plaintiff has not met her burden of showing that any other employee outside of her protected class committed an infraction or infractions of the company's Code of Business Conduct or FMLA policy as serious as plaintiff's but was nevertheless retained by Ohio Bell.  For this reason, the Court finds that plaintiff has failed to establish a *prima facie* case of employment discrimination on any basis.

Even assuming that plaintiff were able to establish a *prima facie* case of discrimination on some basis, defendants also persuasively argue that they are entitled to summary judgment because they had a legitimate nondiscriminatory reason for terminating plaintiff's employment –  their genuine and reasonable belief after conducting an investigation that plaintiff's request for FMLA leave and paid sick time on July 14, 2011 was dishonest and an abuse of company benefits – and plaintiff has failed to come forward with sufficient evidence to show that this legitimate reason is a pretext.

In order to survive summary judgment on an employment discrimination claim, the plaintiff bears the burden of pointing to evidence in the record from which a reasonable jury could find that an employer's demonstrated legitimate reason for terminating plaintiff is a pretext for illegal discrimination.  A plaintiff can demonstrate pretext by showing that the defendant's proffered reason for her termination: (1) had no basis in fact; (2) did not actually motivate her discharge; or (3) was insufficient to warrant her discharge.  *See Quinn-Hunt*, 211 Fed. Appx. at 459.  If a plaintiff fails to carry this burden to rebut a defendant's legitimate nondiscriminatory reason for a termination, summary judgment is appropriate.  *See Barnhart*

12

*v. Peckrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1395 (6th Cir.1993).

Plaintiff contends in her memorandum in opposition to defendants' motion that there are "sufficient facts, and inferences to be drawn from those facts" to demonstrate "sincere questions regarding pretext."  (Pltf. Opp. at 8.)  Plaintiff does not clearly identity the specific facts and inferences she contends demonstrate pretext, but she asserts that pretext exists because there is "strong evidence" in the case "of a religious discriminatory animus against [her]."  (Pltf. Opp. at 9.)[2]  She asserts that "her termination on the grounds of FMLA was pretextual, and [that] the true reason for [her] termination was based on her conversion to the religion of Islam." (Pltf. Opp. at 14.)  Plaintiff summarizes in her brief the harassment and mistreatment she contends she suffered from co-workers at work on the basis of her religion. She contends that beginning in early 2010, she suffered repeated racists and religious slurs from co-workers, including, among other things, comments by her co-workers that she was a "terrorist," "Al-Qaida," and "Osama Bin Laden."  She states that her co-workers also "mocked her" by stating to her that her religious leader, Louis Farrakhan, was a terrorist and asking her whether she was trained to make bombs.  In addition, she asserts that her co-workers harassed her "because of her reading religious material and wearing . . . an Islamic headscarf" at work.

---

[2]

Plaintiff, however, does not dispute any of the facts on which defendants' decision to terminate her was based, namely, that she admitted in her investigative interview and during her Review Board hearing that she went to the Cuyahoga County Probate Court to obtain a marriage license during the period of her shift when she claimed she was too sick to work; she requested the time off that day as FMLA leave only after being denied a vacation day; and she knew when she sought the leave that she needed to obtain a marriage license that day in order to proceed with her plans to get married that evening.

13

Plaintiff asserts that she complained to her supervisor, Dierdre Thomas, about this conduct of her co-workers in 2011, but that Ms. Thomas did not take any action.  Rather, Ms. Thomas "merely deflected the complaints by stating that it would take time to change things" and told plaintiff that "she needed to stop crying and complaining, and to get rid of her Quran and other materials and remove them from her work desk altogether."  (Pltf. Opp. at 10-11.) Plaintiff asserts that Thomas also denied a request she made in November 2010 for a religious "accommodation" that would have allowed her to "make prayer five (5) times a day and be free from harassment."  She states that she asked to "be moved to the 10th floor, where she could get away from her harassers and make prayer on her breaks and study the Holy Quran." (Pltf. Opp. at 11.)

However, as defendants point out in their opening brief, even assuming that this conduct by plaintiff's co-workers took place and that Thomas knew about it, plaintiff has not pointed to  evidence demonstrating that any of the actual decision-makers regarding the adverse employment action against her had any knowledge of her religion or her complaints such that Ohio Bell could reasonably be said to have terminated plaintiff "because of" her religion, rather than because of the decision-makers' reasonable finding that plaintiff had violated company rules and abused FMLA leave by seeking FMLA leave on a day that she was not actually too incapacitated to work.  As the Sixth Circuit has held, a plaintiff cannot establish even a *prima facie* of discrimination on the basis of a protected trait unless the plaintiff demonstrates that the actual decision-makers involved with the asserted adverse employment action had knowledge of the protected trait.  *See Prebilich-Holland v. Gaylord Ent. Co.*, 297 F.3d 438 (6th Cir. 2002).  *See also Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876,

14

884 (6th Cir. 1996) (employer could not have discriminated against an employee because of her protected class – a disability – if it had no knowledge of the disability).  Plaintiff has not pointed to evidence in the record demonstrating that the actual decision-makers in this case (namely, Miceli, Glass, Williams, McCarter, and Plant) had any knowledge of her religion or religious complaints at the time of the adverse actions.  Plaintiff has not pointed to competent evidence to show that Thomas, who she asserts knew of her complaints, had any input or decision-making authority in connection with the adverse actions.  Plaintiff purports to state in a declaration filed in connection with her opposition brief that Thomas "initiated" the investigation against her.  However, as defendants persuasively point out, plaintiff's declaration is inconsistent with plaintiff's prior sworn deposition testimony that she had no information that Thomas took any adverse action against her or knew who was involved in the decision to terminate her.  Further, plaintiff does not state in her declaration her basis for knowing, post-deposition, that Thomas initiated the investigation against her.  The Court does not find plaintiff's post-deposition declaration sufficient evidence to show that the decision-makers involved in her termination had any knowledge of her religion.

In sum, plaintiff has failed to point to evidence in the record sufficient to demonstrate that her religion, rather than the decision-makers' genuine belief that plaintiff had abused FMLA leave, was the true motivation for plaintiff's termination.

Furthermore, as defendants also correctly point out, the Sixth Circuit has adopted the "honest belief" rule with regard to an employer's proffered reason for discharging an employee provided that "[w]here the employer can demonstrate an honest belief in its proffered reason . . . [an] inference of pretext is not warranted."  *Marks v. Ohio Bell*

*Telephone Co.*, No. 11-3950, slip op. at 6 (6th Cir. July 19, 2012), *citing Seeger v. Cincinnati Bell Tel. Co.*, No. 10-6148, 2012 WL 1592670, at *9 (6th Cir. May 8, 2012).  *See also Majewski v. Automatic Data Processing, Inc*., 274 F.3d 1106, 1117 (6th Cir. 2001).  "Under this rule, as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski*, 274 F.3d at 1117.  Rather, in order to show pretext in this circumstance the plaintiff must show that the defendant did not honestly believe its stated reason.  *Abdulnour v. Campbell Soup Supply Co., Inc.*, LLC, 502 F.3d 496, 502-03 (6th Cir. 2007).  An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied "on the particularized facts that were before it at the time the decision was made." *Majewski*, 274 F.3d at 1117.

Here, defendants have demonstrated that they had an honest belief in their stated reason for terminating plaintiff.  As discussed above, the particularized facts that were before Ohio Bell after it investigated plaintiff's situation were that plaintiff admitted to calling off sick and using FMLA leave on a day that she felt well enough to go to the Cuyahoga County Probate Court to obtain a marriage license (a license she knew in advance she would have to obtain during working hours that day in order to married that same evening according to her pre-set plans); that plaintiff chose to work the day before (July 13) for overtime compensation even though she had not originally been scheduled to work that day; and that plaintiff requested to use FMLA leave on July 14th only after she was first denied a request – made on the morning before her shift – to take a vacation day.  Based on all of these particularized facts, Ohio Bell reasonably concluded that plaintiff violated the company's code of business

16

conduct by misusing FMLA leave and seeking company-paid time off when she was not actually too incapacitated by a migraine headache to come to work.  In order to meet her burden to show that this reason is pretextual, the plaintiff must do more than merely show that Ohio Bell's conclusion was incorrect.  Rather, the plaintiff must demonstrate that Ohio Bell did not honestly believe that she had engaged in FMLA and sick pay fraud on the particularized facts it had.  Plaintiff has failed to make this showing.

Plaintiff attempts to demonstrate pretext by pointing to the determination of Ohio's Unemployment Compensation Review Commission that there was insufficient evidence of a motive on plaintiff's part to "fraudulently take an FMLA day off."  (Pltf. Opp. at 16.)  In considering whether plaintiff was eligible to receive unemployment benefits under state law, the state unemployment agency found "insufficient evidence to support [the] contention [that plaintiff violated Ohio Bell's Code of Business Conduct] by fraudulently using a FMLA day," stating:

> The fact that claimant went to the county courthouse to apply for her marriage license later in the day does not mean that she did not have a migraine headache when she reported off.  Furthermore, the fact that claimant was able to go to the courthouse and apply for a marriage license does not mean that she would be able to sit in front of a computer screen and perform her job functions for an eight hour day.

(*Id.*)

However, the fact that the Ohio Unemployment Compensation Review Commission made a different determination than Ohio Bell (in connection with determining plaintiff's ability to receive unemployment benefits under state law) is not relevant for purposes of determining whether plaintiff has satisfied the legal burdens she bears associated with proving pretext in an employment discrimination lawsuit.  *See e.g., McClendon v. Indiana Sugars,*

17

*Inc.*, 108 F.3d 789, 798 (7th Cir.1997) (holding that state administrative agency's finding in connection with an employee's unemployment compensation claim – purportedly finding that employee was not rude or insubordinate to supervisors as employer found – could not be relied on to show that employer's proffered reason for terminating employee (insubordination) was pretextual in the context of an employment discrimination lawsuit). *See also Pascual v. Anchor Adv. Prod., Inc.*, Case No. 96-5452, 1997 WL 397221, at *4 (6th Cir. July 10, 1997) (citing *McClendon* and finding that district court did not err in excluding findings of state unemployment agency in discrimination case).

Rather, the Sixth Circuit has made clear that in employment discrimination cases, where an employer reasonably and honestly relies on particularized facts in making an employment decision, "it is entitled to summary judgment on pretext even if its conclusion is later shown to be mistaken, foolish, trivial, or baseless." *Chen v. Dow Chemical Co.*, 580 F.3d 394, 401 (6th Cir. 2009).  Accordingly, the findings and reasoning of the Ohio's unemployment commission in connection with plaintiff's request to receive unemployment benefits are irrelevant and insufficient to show pretext.

For all of the reasons stated above, defendants are entitled to summary judgment on plaintiff's employment discrimination claims both because plaintiff has failed to demonstrate the fourth element of a *prima facie* case and because plaintiff has failed to come forward with evidence sufficient to raise a genuine issue of triable fact as to pretext.  Plaintiff has failed to point to evidence demonstrating than any employee outside of her protected class similarly situated to her in all relevant respects was treated more favorably and from which a reasonable jury could conclude that the decision-makers involved in her case did not honestly

18

believe in good faith that she abused FMLA leave on July 14, 2011.

*FMLA Claim*

The FMLA permits eligible employees to take unpaid temporary medical leave for up to twelve weeks in a twelve month period due to a "serious health condition" that prevents the employee from performing the functions of her job.  29 U.S.C. §2612)(a)(1)(D).  "An employer is prohibited from discriminating against employees . . . who have used FMLA leave," and the employer cannot "use the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c).  This includes prohibiting employers from discharging employees in retaliation for taking FMLA leave.  *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

Plaintiffs alleging FMLA retaliation prove their cases under the same burden-shifting approach applicable in other employment discrimination actions.  A plaintiff establishes a *prima facie* case of retaliation under the FMLA by demonstrating that:  (1) she exercised her rights under the FMLA; (2) she was adversely affected by a decision of her employer; and (3) there was a causal connection between her exercising her FMLA right and the adverse employment action.  *Gembus v. MetroHealth Sys.*, 290 Fed. Appx. 842, 844 (6th Cir. 2008).  If the plaintiff meets this *prima facie* burden, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the plaintiff's discharge.  *Skrjanc*, 272 F.3d at 314.  If the defendant presents such a legitimate reason, the burden shifts back to the plaintiff to prove that the defendant's proffered reason was merely "pretextual and that unlawful discrimination was the real reason for the adverse action."  *Gibson v. City of Louisville*, 336 F.3d 511, 513 (6th Cir. 2003).

19

Assuming plaintiff's second cause of action under the FMLA is based on a contention that plaintiff was terminated in retaliation for her asserting FMLA rights (as defendants appear to conclude), defendants are entitled to summary judgment on the claim because, as discussed above, plaintiff has failed to meet her burden of rebutting defendants' asserted legitimate nondiscriminatory reason for terminating plaintiff.  Even assuming plaintiff is able to make out a *prima facie* case of retaliation under the FMLA, plaintiff has failed to come forward with evidence from which a reasonable jury could find that the decision-makers involved in her case did not honestly believe that she had abused FMLA leave in connection with her absence from work on July 14, 2011.

Plaintiff appears to contend in her opposition brief that her FMLA claim is based on "FMLA [i]nterference" theory, not on a theory of retaliation.  (*See* Pltf. Opp. at 13.)  There are two distinct theories for recovery under the FMLA:  (1) the "entitlement" or "interference" theory arising from 29 U.S.C. §2615(a)(1); and (2) the "retaliation" or "discrimination" theory arising from 29 U.S.C. §2615(a)(2).  *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004).  The interference theory does not require an employee to demonstrate that she was treated worse than any other employee, just that she was denied an entitlement under the FMLA regardless of her employer's intent.  *Id*.  Plaintiff asserts that "Ohio Bell interfered with her exercise of her rights under the FMLA by denying her FMLA leave on July 14, 2012 [sic], and holding that she committed a fraud."  (Pltf. Opp. at 13.)

However, the plaintiff has not cited any authority endorsing an FMLA interference claim on the facts presented here, and the Court finds that the facts are insufficient to support

an FMLA "interference" claim.[3]  As plaintiff herself states in her opposition brief, in order to prevail on an interference claim under the FMLA, a plaintiff must establish that: (1) she is an "eligible employee" under the FMLA; (2) the defendant is an "employer"; (3) the employee was entitled to leave under the FMLA; (4) the employee gave her employer notice of her intention to take leave; and (5) **the employer denied the employee FMLA benefits** to which she was entitled.  *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 714, 719 (6th Cir. 2003) (emphasis added).  Plaintiff points to no evidence in the record demonstrating that Ohio Bell denied her any "FMLA benefits."   Rather, the facts demonstrate that Ohio Bell approved plaintiff's request for FMLA leave on July 14, 2011, but later determined that plaintiff fraudulently sought and used FMLA leave on that day and terminated plaintiff in September 2011 for this reason.  Even though plaintiff contends that Ohio Bell wrongly determined she fraudulently used FMLA leave, and that her absence on July 14, 2011 was in fact "related to her severe condition of often and randomly experiencing migraine headaches," plaintiff has not shown that she was denied "FMLA benefits."  Instead,  she was terminated by Ohio Bell. Therefore, if plaintiff has any claim against Ohio Bell under the FMLA, it must be a claim that she was wrongly terminated by Ohio Bell as a result of an alleged legitimate assertion of a right under the FMLA.  This characterizes a retaliation claim, not a claim of "interference."

    For all of the reasons discussed above, summary judgment is warranted on plaintiff's second cause of action alleging a violation of the FMLA.

---

[3]    Furthermore, as defendants point out, FMLA "interference" was not clearly alleged in plaintiff's complaint.

*Hostile Work Environment*

The Sixth Circuit has repeatedly observed that conduct in the workplace, even if properly characterized as "deplorable, off-color, or offensive to our most basic value of according respect and dignity to every person," is not always legally actionable as a hostile work environment.  *Kelly v. Senior Centers, Inc.*, 169 Fed. Appx. 423, 429 (6th Cir. 2009).  Rather, discrimination in the form of a hostile work environment occurs only when the workplace is said to be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Williams v. Gen. Motors Corp*., 187 F.3d 553, 560 (6th Cir. 1999).

A plaintiff establishes a *prima facie* case of hostile work environment based on race or religion by demonstrating the following elements: (1) that she was a member of a protected class; (2) that she was subjected to unwelcomed racial and/or religious harassment; (3) that the harassment was based on race or religion; (4) that the harassment had the effect of unreasonably interfering with the plaintiff's work performance by creating an intimidating, hostile, or offensive work environment; and (5) that the employer was liable for the harassment.  *See Bourini v. Bridgestone/Firestone North Am. Tire*, 136 Fed. App. 747, 750-51 (6th Cir. 2005).

In determining whether a hostile work environment exists under this standard, the Court looks to the totality of the circumstances.  The conduct must be "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive,"and "the victim must subjectively regard [it] as abusive."  *Id.* at 751.  Appropriate factors for the

22

court to consider when determining whether workplace conduct is severe or pervasive enough to constitute a hostile work environment include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  The Supreme Court has consistently held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  *Id.*

Further, the Sixth Circuit has instructed that "Title VII is not a general civility code for the American workplace" and that "personal conflict does not equate with discriminatory animus." *Vitt v. City of Cincinnati,* 97 Fed. Appx. 634, 638 (6th Cir. 2004).  Rather, "lawful conduct - even if insensitive -" must be distinguished from discriminatory harassment.  *Id.*

Defendants contend that plaintiff's evidence in this case is insufficient to demonstrate a hostile work environment, arguing that the incidents plaintiff complained of in her deposition consist of approximately six comments by co-workers over a one year period of time and an instruction by her supervisor, Thomas, to remove a written prayer from her desk and to stop reading her Quran and religious newspaper at work.  (Def. Mem. at 17-18.) Defendants contend these incidents "were neither severe nor pervasive so as to create an abusive and discriminatory working environment."  Rather, defendants contend that

> [t]he comments were isolated and sporadic . . . thereby negating any conclusion that [plaintiff's] environment was permeated with discriminatory ridicule.  Moreover, the alleged comments – mostly about "terrorists" – were clearly rooted in ignorance and not a discriminatory animus against a particular religion, such as [the Nation of Islam] or Muslims.  *Mowafy v. Noramco of Delaware, Inc.,* 620 F. Supp.2d 603, 616 (D. Del. 2009) (explaining that comments about why "Muslims produce so many terrorists" reflects a lack of understanding and ignorance, but does not discern a clear discriminatory

23

motive).  Further, while the alleged comments were no doubt offensive, they were not threatening in any way.  Thus, assuming all of [plaintiff's] harassment allegations are true, they do not rise to an actionable harassment claim.  *See, e.g., Bourini v. Bridgestone/Firestone North Am. Tire*, 136 Fed. App. 747 (6th Cir. 2005) (finding that offensive and inappropriate comments did not constitute actionable harassment because they did not collectively rise to the level of threatening or humiliating so as to create an objectively hostile work environment). . . .

Further, [plaintiff] cannot show that the alleged harassment unreasonably interfered with her work performance.  To the contrary, she testified that other than having to allegedly mute her phone on one occasion because of an inappropriate discussion taking place in the background, the comments did not otherwise interfere with her work performance and that she consistently attained her sales goals and other performance expectations.  (Durden Dep. at 225-227).

(Def. Mem. at 18-19.)

Plaintiff does not demonstrate that the totality of the circumstances is sufficient to constitute a legally actionable hostile work environment.  She cites no case finding a hostile work environment on similar facts.  She merely asserts (in the section of her brief labeled "Statement of Disputed Facts"[4]) that she "suffered from repeated racist and religious slurs from her co-workers, which she reported to management."  And, relying on medical notes of a Dr. Marbury that are attached to her opposition brief, plaintiff asserts that the "kind of psychological attacks" she experienced from her co-workers "caused [her] to seek therapy by which she was diagnosed to have experienced post traumatic stress, which resulted in a bi polar condition for which she was referred to psychiatric treatment."  (Pltf. Opp. at 10.)

The Court agrees with defendants that plaintiff has failed to make a *prima facie* showing from which a reasonable jury could find a hostile work environment.  As defendants

---

[4]

Plaintiff's opposition brief does not include a specific section labeled hostile work environment to address her claim.

persuasively demonstrate, plaintiff testified in her deposition that her co-workers made a total of six offensive comments to her over an approximately one-year period.  She testified that other than these six comments, she had no other examples or evidence of harassing conduct. (*See* Pltf. Dep. at 225.)  The Court agrees with defendants that the conduct and comments of which plaintiff complained in her deposition, though properly characterized as offensive and inappropriate, do not rise to the level or the kind of severe or pervasive conduct necessary to support a claim for a hostile work environment.  There is no evidence that the comments and conduct were threatening to plaintiff in any way and or that they had the effect of unreasonably interfering with plaintiff's work performance.  Furthermore, the notes of "Dr. Marbury" that plaintiff submits with her opposition brief, even if they are properly before the Court, on their face do not demonstrate that the comments and mocking of her co-workers interfered with her work or work performance prior to the time she was terminated by Ohio Bell for misusing FMLA leave.  (The notes pertain to a doctor's visit plaintiff had with Dr. Marbury in May 2012 – after plaintiff was terminated – and the notes list factors other than harassment by co-workers as contributing to stress in plaintiff's life, including the fact that plaintiff had been terminated from her job at Ohio Bell and the stresses of her new marriage and conflict about her religion.)

In short, plaintiff has failed to come forward with sufficient evidence to show a viable claim for hostile work environment discrimination.

*Public Policy*

Finally, defendants contend the Ohio Supreme Court's decision in *Leininger v. Pioneer National Latex*, 115 Ohio St. 311 (2007), demonstrates that plaintiff's state law

public policy claim fails as a matter of law.  *Leininger* held that a plaintiff could not maintain a wrongful discharge claim based on a public policy against discrimination because Ohio Rev. Code §4112 provides an adequate remedy for such conduct.  Plaintiff does not address *Leininger* or provide any law to the contrary.

 *Leininger* demonstrates that plaintiff's fourth cause of action, alleging wrongful discharge in violation of public policy, fails as a matter of law.  *See also Chenzira v. Cincinnati Children's Hosp. Med. Ctr.*, Case No. 11 CV 917, 2012 WL 6721098, at *4 (6th Cir. Dec. 12, 2012) (holding that a state law claim for wrongful discharge in violation of public policy fails because anti-discrimination statutes, Title VII and Ohio Revised Code Chapter 4112, provide adequate protection and remedies for the discrimination alleged).

 **Conclusion**

 For all of the reasons stated above, none of plaintiff's claims are sufficient to survive summary judgment.  Defendants' motion for summary judgment, accordingly, is granted.

 IT IS SO ORDERED.


      /s/ Patricia A. Gaughan
     PATRICIA A. GAUGHAN
     United States District Judge

Dated: 4/2/13

26